IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANIELLE RHOTEN,

        Plaintiff,

vs.                                                          Case No. 04-4160-SAC

BRUCE DICKSON, IV,
FRANK PASE, as an agent and employee
of Topeka, Kansas and as individual, and
THE CITY OF TOPEKA, KANSAS,

        Defendants.

MEMORANDUM AND ORDER

This case arises out of a collision between a pickup truck driven by defendant Bruce Dickson, IV and a van in which the plaintiff was a passenger. The case comes before the court on multiple motions filed by all parties: motion for summary judgment by defendant Frank Pase (Dk. 71); motion for summary judgment by defendant City of Topeka, Kansas (Dk. 171); motion to dismiss by defendant Bruce Dickson, IV (Dk. 173); and plaintiff's motions for partial summary judgment (Dk. 175, 178).

**I. Summary judgment standard**

An important function of summary judgment is to eliminate factually unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *Id.* at 323.  The court considers the 'factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.' " *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1182-83 (10th Cir. 1995) (quoting *Blue Circle Cement, Inc. v. Bd. of County Comm'rs*., 27 F.3d 1499, 1503 (10th Cir.1994)); *see also* Fed. R. Civ. P. 56(c).  "Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof."  *Rohrbaugh*, 53 F.3d at 1183.

Once the movant demonstrates no genuine issue of material fact, the nonmovant is given "wide berth to prove a factual controversy exists."  *Jeffries v. Kansas, Dep't of Soc. & Rehab. Servs*., 147 F.3d 1220, 1228 (10th Cir. 1998) (quotation omitted).  Unsupported conclusory allegations, however, do not create an issue of fact.  *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004).  A plaintiff has an obligation to "present some evidence to support the allegations; mere allegations, without more, are insufficient to avoid summary judgment."  *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997).  The plaintiff must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in

order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 n. 3 (10th Cir.1992).  Ultimately, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

**II. Undisputed facts**

On the evening of February 5, 2004, a little before 7:00 p.m., defendant Bruce Dickson, IV,  was driving a Ford F-150 pickup truck with its four-wheel drive engaged.  Dickson was in north Topeka, southbound on Topeka Boulevard.   Several inches of snow had fallen, producing an accumulation of up to ten inches in places.  Some roads had been plowed and some places were wet, slushy or slick.  Dickson felt comfortable driving the speed limit in the existing road conditions.

Defendant Pase, a Lieutenant with the Topeka Police Department, was on duty that evening, driving an unmarked dark blue patrol car.  He too was southbound on Topeka Boulevard when he noticed defendant Dickson's pickup approximately one block away.  His attention was drawn to the pickup by its quick

lane changes and its speed, as he saw it weave in and out of traffic, passing two or three of the seven or eight vehicles in both lanes at the north end of the bridge. Pase also noticed a dark colored car closely following the pickup as it wove in and out of traffic.  Pase accelerated from approximately 35 m.p.h. to approximately 55 m.p.h., intending to stop the pickup and get a better description and possibly a tag number from the pickup and the car, both of which preceded him southbound on the Topeka Boulevard bridge.

Pase did not activate his lights or siren or contact his dispatcher at any time during his pursuit of the vehicles.  Pase's unmarked police car was equipped with a rear-facing red and blue flashing light mounted on the inside of the car in the rear window, a red and blue flashing strobe on the passenger sun visor, "wig-wag" headlights, a siren, all season tires, and a chrome spotlight mounted on the front driver's side windshield pillar.  Pase intended to activate his lights and siren when he got closer to the pickup.

The bridge inclines as one proceeds southbound and rises to a crest, after which there is a flat expanse of bridge across the river.  Pase accelerated to 65 m.p.h. in a 35 m.p.h. zone as he approached the crest on the north end of the bridge and reached its flat expanse, but could not see Dickson's pickup.  Pase saw the dark-colored car which had been following the pickup reduce its speed, discontinue

passing, and move into the right lane.  Pase  passed it as well as other vehicles in

his attempt to follow Dickson's pickup, which was by then out of sight over the

southern crest of the bridge.

As Pase passed the southern crest of the bridge, he could see some

traffic in both lanes at the south end of the bridge.  As Pace approached the south

end of the bridge, he spotted Dickson's pickup off the bridge near Third Street and

Topeka Boulevard, approximately two blocks from him.  Pase believed Dickson's

pickup had been slowed by traffic at the south end of the bridge.  He saw

Dickson's pickup accelerate and drive through green lights at Third, Fourth and

Fifth Streets.  Dickson's pickup then collided with a northbound van which was

attempting to turn west at Sixth Street and Topeka Blvd.  Pase was approximately

two blocks north at the time of the collision, still attempting to follow Dickson.

Plaintiff was a passenger in the van which collided with Dickson's

pickup.  The van's driver, Marco Conley, never saw Pase's vehicle prior to the

accident.  Pase immediately drove to the scene of the accident and  activated his

emergency lights.  Pase told Dickson he had clocked his speed and that he was

"following and/or chasing" him.  Pase commented to a  passenger in the same

vehicle as plaintiff that he had "been trying to catch this guy since North Topeka."

Plaintiff sustained serious injuries from the accident, including the

loss of her unborn son, whose birth was expected in two weeks.  Plaintiff has brought substantive due process claims against Pase and the City of Topeka as well as negligence and negligence per se claims against Dickson, Pase, and the City of Topeka.

Factual disputes exist regarding whether the light facing Dickson at Sixth Street was green or red, regarding the speed at which parties were traveling at various times including immediately prior to impact, and other matters not at issue in these motions.[1]  Other undisputed facts will be addressed in the body of this memorandum, as relevant.

## III.  Substantive due process claim against defendant Pace

The Court first examines defendant's motion for summary judgment on the claim which ultimately provides the basis for this court's subject matter jurisdiction over this dispute - plaintiff's claim that defendant Pase violated her substantive due process rights under 28 U.S.C. § 1983.[2]  When faced with a claim of qualified immunity against § 1983 substantive due process claims, the court's

---

[1]Defendant Dickson has not filed a motion for summary judgment, but has moved to dismiss the state law claims in the event the court grants summary judgment on the federal claim.  Dk. 173.

[2]Plaintiff also brings a substantive due process claim against the City, but a municipality may not be held liable where there is no underlying constitutional violation by its officer.  *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir.2006).

6

first task is to determine whether a plaintiff "has asserted a violation of a

constitutional right at all." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir.

2006), quoting *Siegert v. Gilley,* 500 U.S. 226, 232 (1991).

## A.  Causal connection

Defendant Pase first contends that his acts are causally unrelated to

plaintiff's injuries, such that summary judgment is warranted on plaintiff's due

process claim.  The court agrees.

To prevail on either a procedural or substantive due process claim, a

plaintiff must first establish that a defendant's actions deprived plaintiff of a

federally protectible interest.  "Substantive due process protects individuals against

"arbitrary action of government" that deprives a citizen of life, liberty or property

..." *Perez v. Unified Government of Wyandotte County/Kansas City*, *Kan.*  432

F.3d 1163, 1166 (10th Cir. 2005).

> Section 1983 does contain a causation requirement.  *See Tonkovich v.*
> *Kansas Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998) ("[A] defendant
> may not be held liable under § 1983 unless he or she subjected a citizen to
> the deprivation, or caused a citizen to be subjected to the deprivation."); 1A
> Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and
> Defenses § 6.3 (3d ed.1997) (discussing causation requirement under
> §1983.  However, that causation element may be satisfied if the defendant's
> conduct was " 'a substantial factor in bringing [the injury] about.' "
> *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996) (quoting
> Restatement (Second) of Torts § 432(2)).

*Wright v. City of St. Francis, KS*,  95 Fed. Appx. 915, 929, 2004 WL 838181, *11

(10th Cir. 2004).  *See also Sparks v. Rittenhouse,* 164 Fed. Appx. 712, 718, 2006

WL 158891, *6 (10th Cir. 2006) ("Causation is also a necessary element of a §

1983 claim of deliberate indifference.  *Daniels v. Gilbreath*, 668 F.2d 477, 488-89

(10th Cir. 1982)").  "In order to survive summary judgment, a plaintiff "need only

raise a genuine issue of material fact regarding the causal connection between an

individual defendant's actions [or inaction] and [the plaintiff's] injury." (Citation

omitted)."  *Neiberger v. Hawkins,* 239 F. Supp. 2d 1140, 1156 (D. Colo. 2002).

The court thus reviews the record to determine whether plaintiff has raised a

genuine issue of material fact that defendant Pase's actions or inactions were a

substantial factor in bringing about plaintiff's injury.

### 1.  Defendant Pase's actions

Plaintiff contends that Pase's abrupt U-turn, his weaving in and out of

traffic on the bridge, his speeding, his failure to activate his lights and siren, among

other acts, caused or contributed to defendant Dickson's driving, injuring plaintiff.

Plaintiff focuses almost exclusively upon the manner in which Pase allegedly

drove, inviting the court to infer causation from conduct and culpability.

Defendant Dickson spoke directly to the issue of causation in his

deposition.  Therein, Dickson stated that he did not notice any other vehicle as he

entered the bridge, but when he was approximately one-third to one halfway across

the bridge, he noticed a white vehicle brake and make an abrupt U-turn near the

north end of the bridge before proceeding southbound.  He identified the car that

made the U-turn as a white car.  Dk. 94/227, Exh. 2, Dickson depo., p. 24-25.  The

following exchange then occurred:

> Q. ...Okay.  Did you look at that white car again after it had done the U-turn?
> A.  I didn't take special notice of it other than I noticed that was kind of an odd place to do a U-turn.
> Q.   Okay.  Now, are you sure this was a white car?
> A. Yes.
> Q.  It was not a dark blue car?
> A.  No.

Dickson depo., p. 26.

It is uncontested that Pase's car on the night in question was dark

blue, not white.  It is similarly uncontested that Pase was southbound at all relevant

times and did not make a U-turn before following Dickson's car across the bridge

on the night in question.[3]

Defendant Dickson repeatedly and unambiguously stated in his

deposition that nothing done by any car following him that night influenced the

---

[3]Plaintiff attempts to contradict this fact and others by mere denial, unaccompanied by relevant citation to and reasonable inference from the record. Here, for example, the court rejects plaintiff's invitation to construe Dickson's testimony that he saw a white car make a U-turn as contradicting Pase's testimony that he never made a U-turn, given the undisputed fact that Pase's car was dark blue.

way Dickson drove his pickup.

> Q.  When you got around halfway across the bridge did - did you notice that
> white car behind you?
> A.  I didn't pay any special attention to it after I saw the – after I saw the
> abrupt U-turn.

Dickson depo., p. 28.

> Q.   Did you ever notice an automobile behind you driving fast ...(colloquy
> of counsel)... as you're going over the bridge?
> A.  Well, no.

Depo., p. 29.

> Q.  Okay.  Did you – between Third Street and Sixth Street did you look in
> your rearview mirror?
> A.  Not that I recall.
> Q.  Did you notice any automobile behind you when you looked back at
> Third Street or if you did look back?
> A.  I didn't look back.

Depo., p. 31.

> Q.  Okay.  After you got past Third Street did you notice a vehicle following
> you behind?
> A.   I don't recall.  I was never under the impression I was being chased.
> Q.  Did anyone tell you that they were chasing you?
> A.  After the accident?
> Q.  Yes.
> A.  It seemed that Officer - Officer Pase had made it clear that he was
> pursuing me after the accident, that he'd clocked me or that he'd paced me
> or to some effect that he was following me or attempting to do – attempting
> to follow me across the bridge down Topeka Boulevard.

Depo. p. 52.

> Q.  All right.  Did you ever see the white car again that did the U-turn and

10

started following you?

A.  No.

Q.  Did - did you see the white car at Third Street behind you?

A.  Nothing – I never – no - no, I never noticed anything out of the ordinary.

Q.  At any time that evening as you were driving southbound on Topeka Boulevard before the collision did you feel that you were being chased by someone?

A.  No.

Depo., p. 76.

Q.  Okay.  All right.  Mr. Dickson, if - if I understand your testimony – and just kind of capsulize what I believe you - you've said is from the – your vehicle being in North Topeka and before you even got on the bridge all the way up until the accident site there was no vehicle behind you, whether it be a police car or a civilian car that influenced the way you drove, would that be correct?

(Objection as to form by counsel.)

A.  That's correct.

Q.  Okay.  In other words, there wasn't anybody that was behind you that was doing something that caused you to change your manner of driving in the least bit, is that true?

A.  No.

Q.  Is that correct?

A.  That's correct.

Depo., p. 100-101 (on cross-examination).  Dickson's deposition contains no

contrary testimony, and consistently reaffirms that his driving was not affected by

anything done by a following vehicle.

        The only other evidence which could support plaintiff's theory is

Pase's report that Dickson's speed increased at 3rd Street.[4]  No evidence tends to

_____

        [4]Contradictory testimony exists on this fact.

establish, however, that Dickson's acceleration bore any relation to any car behind him.  To believe that Dickson accelerated at 3rd Street because he was attempting to flee from Pase, one would have to ignore or discredit Dickson's repeated and consistent testimony that he was never under the impression he was being chased, that he never noticed anything out of the ordinary behind him, that he didn't pay much attention to the car that U-turned behind him, and that no one behind him did anything that made him change his manner of driving.  Further, the reasonable inference from the only admissible, relevant evidence which speaks to this issue, (Pase's testimony) is that Dickson's acceleration was merely an attempt to regain the speed at which he had been traveling before he slowed down for traffic at the south end of the bridge.[5]  In short, the evidence fails to raise a material question of fact that Dickson's acceleration at Third and Topeka was related in some manner to Pase's pursuit, rather than solely to the traffic, road, or weather conditions.

Plaintiff correctly notes that Pase's report states: "One identifier of my vehicle being a suspected Police car is the chrome spotlight mounted on the front driver's side windshield pillar."  Dk. 94/227 (Pase depo. Exh. 5).  But no evidence

---

[5]Pase notes he saw "some traffic at the south end of the bridge in both lanes...This group of vehicles apparently showed the Ford pickup, before it was able to pass the vehicles. [I] then observed the Ford pickup southbound at Third and Topeka accelerating..."  Dk. 94/227 (Pase Depo. Exh 5).

suggests that Dickson ever saw the chrome spotlight on Pase's car or for any other reason believed he was being pursued by the police.  The facts of record, including the distance between Dickson's vehicle and Pase's vehicle, the presence of other vehicles in between those two vehicles, the fact Pase's car was unmarked and used no lights or siren, and the time of night and its attendant darkness,[6] fail to raise a material question of fact about whether Pase's acts influenced Dickson's driving.

Plaintiff attempts to create an issue of fact on this matter by reliance upon a recorded claims statement Dickson made to an insurance agent.  Plaintiff contends that this insurance statement, in conjunction with Pase's report, creates an inference that Dickson realized when he went through the 3rd Street intersection that a car could be "chasing him" or "coming to track [him] down," and that the car was Pase's.  Construed in the light most favorable to plaintiff, the insurance statement could be read to say that when Dickson was near the Third Street intersection, he noticed a vehicle behind him going real fast, weaving in and out of

---

[6]Plaintiff's counsel contends it was dark outside but cites no record to support that assertion.  Nonetheless, the court takes judicial notice of the fact that darkness arrives by 7:00 p.m. in early February in Topeka, Kansas.  *See  St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp*., 605 F.2d 1169, 1171 -1172 (10th Cir. 1979) (finding "a district court  may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial."); *United States v. Arney*, 248 F.3d 984, 989 (10th Cir. 2001) (taking judicial notice that darkness comes earlier in December than in other months.)

traffic, and that the vehicle was Pase's.

The recorded insurance claims statement is hearsay.  *See* Fed. R. Evid.
801(c).  The exhibit is a purported transcript of a telephone conversation between
Dickson and an insurance agent, offered to support Dickson's knowledge that
someone could be chasing him or coming to track him down, as relevant to the
requisite causal element of the claim.  It is thus offered to prove the truth of the
matter asserted.  "Hearsay testimony that would be inadmissible at trial cannot be
used to defeat a motion for summary judgment[.]" *Adams v. American Guar. &
Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).  "A transcript of an interview
is classic hearsay and, therefore, is inadmissible in ruling on a motion for summary
judgment unless properly offered under one of the exceptions to the hearsay rule."
*Estate of Sisk v. Manzanares,* 262 F. Supp. 2d 1162, 1167 (D. Kan. 2002).

Although plaintiff does not so contend, the recorded insurance claims
statement could arguably be regarded as a business record of Safeco Insurance
Company.  However, "business records, which normally would be admissible at
trial under the hearsay exception, may be considered to avoid summary judgment
only if authenticated by a person through whom the exhibits could be admitted into
evidence." *Foster v. AlliedSignal, Inc*., 98 F. Supp. 2d 1261, 1265-66 (D. Kan.
2000), *rev'd on other grounds*, 293 F.3d 1187, (10th Cir. 2002);  *see also,*

14

*e.g.,Patterson v. Dahlsten Truck Line, Inc*., 130 F. Supp. 2d 1228, 1234 (D. Kan. 2000) (declining to consider a particular business record in ruling on a motion for summary judgment because it was not properly authenticated); *IBP, Inc. v. Mercantile Bank*, 6 F. Supp. 2d 1258, 1263 (D. Kan. 1998) (citing extensive authority to support that rule of law).  Where a party fails to properly authenticate a document as a business record, that document must be disregarded as evidence in a summary judgment motion.  *See Aklagi v. Nationscredit Financial,* 196 F. Supp. 2d 1186, 1191 (D. Kan. 2002).  Plaintiff has failed to provide the court with an affidavit or any other evidence that would bring this exhibit within any exception to the hearsay rule.

Additionally, "for purposes of summary judgment, each document must be authenticated through a supporting affidavit or deposition excerpt from anyone with personal knowledge of the facts contained in the exhibit." [7] *Bunker v. City of Olathe, Kan*., 97 F. Supp. 2d 1241, 1246 (D. Kan. 2000).  *See* Fed. R. Civ. P. 56(c) and (e); D. Kan. Rule 56.1(d).  "[T]he court may disregard facts supported

---

[7]In Dickson's deposition, he acknowledges that he "vaguely" recalled having given a tape-recorded statement, that he did not know when, that he had never had an opportunity to review the statement prior to his deposition, and that he did not recall giving certain responses recorded in the statement including that he noticed a car behind him when he was near the Third Street intersection.  Dickson depo. p. 36-38, 60-65.

only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e)." *Powers v. Tweco Prods., Inc*., 206 F. Supp. 2d 1097, 1103 (D. Kan. 2002) (citing Fed. R. Civ. P. 56(e). *see, e.g., Getz v. Board of County Comm'rs*, 194 F. Supp. 2d 1154, 1157 n. 1 (D. Kan. 2002) (applying this rule and disregarding summary judgment exhibits that the parties failed to authenticate); *Patterson v. Dahlsten Truck Line, Inc*., 130 F. Supp. 2d 1228, 1234 (D. Kan. 2000) (same).

Although the parties have stipulated to the admissibility of certain documents and to the fact that others constitute business records, *see* pretrial order section 4, the recorded insurance claims statement is not among the stipulated documents. This document has not been authenticated, nor has Dickson sufficiently adopted it in his deposition. Accordingly, the court has disregarded all factual allegations which are supported by reference to this exhibit.

Assuming, arguendo, that Dickson's May 10, 2004 recorded insurance claims statement is admissible, it fails to support plaintiff's position. It includes the following pertinent discussion:

> Q. Okay. And, um, were there any witnesses to the accident?
> A. Um, I know there was, there was one who claimed he was, uh, an off, he was a Topeka sheriff. I can't remember if he said he was off duty or undercover. I do remember there was a car that pulled a U-turn, um, at the

north end of the Topeka Bridge, and, uh, he was weaving in and out of traffic behind me.  And I, it was to the point where I assumed that it was, uh, I didn't know if it was a private person that was, that was chasing me or something.  I didn't really pay much attention to it, and I just kept driving.  But he was driving real fast, weaving in and out of traffic behind me.  And he said, he said he saw the accident, and he talked to the police.

Q.  You said you weren't sure if he was chasing you?

A.  No, I can't, I, I, I can't, he said he was chasing me when he got out, but, I mean, I didn't see any lights or anything.  For all I know, it was a, I didn't know if it was a private person that was coming to track me down, or I didn't know what was going on.

Q.  This was before the accident?

A.  Yeah, I noticed him before the accident.  And then, when I got in the, as soon as the cops were there, he was...

Q.  So before the accident happened, you said this car was chasing after you?

A.  Well, I can't say he was chasing after me.  He said he was chasing me.  I didn't take it, I didn't notice it 'til probably a street or two, um, before the intersection of 6th that, uh, you know, that he was really going fast in and out of traffic and he was behind me.  I saw him turn around, but it didn't occur to me that he could be chasing me 'til then.

Q.  Where did you see him turn around?  How far back were you at that point?

A.  Um, I would have been about a third of the way across the bridge.

Q.  Okay.  But then you said you noticed him behind you about how far away?

A.  Um, once I'd crossed the bridge and gone through, I think it was the 3rd, 3rd, or 3rd Street intersection, I noticed he was back there, and looked like he was going real fast, and he was weaving in and out of traffic.  But he didn't have lights on or anything, so I didn't, I didn't really, I didn't think it was a police officer.  That didn't even cross my mind.

Dk. 94/227, Exh. 2, Dickson depo. exh. 1, p. 5-6.  Although Pase is not a "Topeka sheriff," Pase does not dispute that he spoke to Dickson soon after the accident occurred.  Accordingly, the court will presume for purposes of this motion, that Dickson's statement about a "Topeka sheriff" relates to Pase.

Plaintiff's assertion that defendant Dickson knew he was being tracked down and was fleeing in fear from Pase, his mystery pursuer, is unsupported by the facts and is a result of divorcing Dickson's words from the context in which they were spoken.  Such a construction flies in the face of Dickson's other statements quoted above, made at the same time which, read in context, show that he "didn't really pay much attention to" the car behind him, but "just kept driving."  The court has carefully reviewed Dickson's statements to the insurance agent and Dickson's statements in his deposition, and finds that those statements, read together with the other evidence, fail to raise a question of fact that defendant Pase's actions were a factor in bringing about plaintiff's injury.

2.  **Inaction of Pase**

The court additionally examines whether a  § 1983 causal connection could be established by virtue of Pase's inaction.   It is undisputed that defendant Pase did not have either his lights or his siren activated as he followed defendant Dickson across the bridge.  Dickson testified that he would have stopped, as he has done on two previous occasions, had he seen a police car with lights on trying to pull him over.  Dickson depo. p. 66-67.  The court will presume, for purposes of this discussion, that had Pase timely activated his lights, Dickson or Conley would

have seen them and would have stopped in sufficient time to have averted the accident.

The court begins with the established proposition that state actors are generally liable under the Due Process Clause only for their own acts and not for private violence. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196-97 (1989). However, there are two recognized exceptions to this rule: (1) the special relationship doctrine; and (2) the "danger creation" theory. No special relationship is alleged.

Under the "danger creation" theory, plaintiff has the burden to show that the state recklessly created the danger that caused the constitutional violation, provided that the other elements of a § 1983 claim have been satisfied. The danger creation doctrine generally makes a state official liable for the private violence of third parties if that official created the danger that caused the harm and the official's conduct was conscience shocking. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279-81 (10th Cir. 2003); *Uhlrig v. Harder*, 64 F.3d 567, 571 -572 (10th Cir. 1995); *Graham v. Independent Sch. Dist. No. I-89*, 22 F.3d 991, 994-95 (10th Cir. 1994); *Medina v. City and County of Denver*, 960 F.2d 1493, 1495-99 (10th Cir. 1992).

To support a substantive due process claim based upon the danger

creation theory, a § 1983 plaintiff must demonstrate, among other elements,

"*affirmative conduct* on the part of the state in placing the plaintiff in danger."

*Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (emphasis in original).

*See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1238 (10th Cir.

1999); *Marino v. Mayger*, 118 Fed. Appx. 393, 402, 2004 WL 2801795, *8 (10th

Cir. 2004) (finding no affirmative conduct alleged); *See Graham*, 22 F.3d at 995

(finding lack of allegation of affirmative conduct fatal to plaintiff's substantive due

process claim).

Where state actors stand by and do nothing when suspicious

circumstances  mandate action, and a plaintiff not in state's custody is injured by

the acts of a private party, the protections of the Due Process Clause are not

invoked.

> We hold foreseeability cannot create an affirmative duty to protect
> when plaintiff remains unable to allege a custodial relationship.  As in
> *DeShaney*, where the "State knew that Joshua faced a special danger of
> abuse at his father's hands···· [t]he most that can be said of the state
> functionaries in this case is that they stood by and did nothing when
> suspicious circumstances dictated a more active role for them." 489 U.S. at
> 197, 203, 109 S. Ct. at 1004, 1007.  We are thus constrained to conclude
> because no special relationship existed between the plaintiffs and
> defendants, defendants' alleged nonfeasance in the face of specific
> information which would mandate action does not invoke the protections of
> the Due Process Clause.  "Inaction by the state in the face of a known danger
> is not enough to trigger the obligation; according to *DeShaney* the state must
> have limited in some way the liberty of a citizen to act on his own behalf."
> *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.), *cert. denied*, 510 U.S. 947,

114 S. Ct. 389, 126 L. Ed. 2d 337 (1993).  In the absence of a custodial relationship, we believe plaintiffs cannot state a constitutional claim based upon the defendants' alleged knowledge of dangerous circumstances.

*Graham*, 22 F.3d at 994-995.

Under the facts of this case, although defendant Pase may have been aware of the dangers faced by the public by virtue of defendant Dickson's driving, he neither played any part in the creation of that danger nor did anything to render plaintiff or anyone else any more vulnerable to them than they otherwise would have been.  Because defendant Dickson's speed and other manner of driving was totally unaffected by Pase's acts and inactions, any danger posed to plaintiff by virtue of Dickson's driving already existed.  Because Pace did not alter the status quo by following Dickson at a high rate of speed without lights or siren, and placed plaintiff in no worse position than that in which plaintiff would have been had Pase never followed Dickson at all, no § 1983 liability exists.  *See Armijo By and Through Chavez v. Wagon Mound Public Schools*, 159 F.3d 1253, 1263 (10th Cir. 1998) (finding where "the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed."); *Compare Medina*, 960 F.2d at 1495-99 (10th Cir. 1992) (finding police officers who engaged in a high speed car chase that resulted in injuries to a

21

bicyclist could be liable for creating a special danger faced by the bicyclist).

The lack of a material question of fact on the causal connection between defendant Pase's actions or inactions and plaintiff's injuries compels summary judgment in favor of defendant Pase on plaintiff's substantive due process claim.

### B.  Shock the conscience

Alternatively, plaintiff's substantive due process claim fails for an independent reason.  "The 'ultimate' standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges."  *Moore*, 438 F.3d at 1040 (internal quotations omitted).

Defendant Pase's acts and omissions alleged by plaintiff are not so outrageous that they shock the conscience of the court, regardless of whether the degree of culpability required is that of deliberate or reckless indifference, *see Moore*, 438 F.3d at 1040-1041; *Tompkins v. City of Hartshorne, Okl.*, 73 F.3d 374 (Table) (10th Cir. 1995), or intent to harm, *see County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (reinstating summary judgment for officer who ran over a boy during a high speed chase conducted in violation of department policy, since no intent to harm suspects physically or to worsen their legal plight was shown);

*Graves*, 450 F.3d at 1220-1221 (no substantive due process violation where

teenaged motorist was involved in fatal accident during a high speed chase

allegedly initiated by an overly-zealous officer out to get the motorist, since no

showing was made that the officer's reaction was motivated by "a purpose to cause

harm unrelated to the legitimate object of arrest" or to worsen the plaintiff's legal

plight); *Perez,* 432 F.3d at 1168 (reversing denial of summary judgment on

substantive due process claim where firetruck responding to an emergency hit a

bystander, but no intent to harm was alleged); *Trigalet v. City of Tulsa, Oklahoma,*

239 F.3d 1150, 1156 (10th Cir. 2001) (finding no substantive due process violation

where a vehicle being pursued by policemen ran a red light and killed three

bystanders); *Radecki v. Barela*, 146 F.3d 1227, 1230 (10th Cir. 1998) (finding no

intent to harm where an officer, accosted by a suspect on the street, asked a citizen

for help and the suspect killed the citizen).

   To meet the lesser of these two standards of culpability, Pase's acts

would have to "reflect[] a wanton or obdurate disregard or complete indifference to

risk, for example 'when the actor does not care whether the other person lives or

dies, despite knowing that there is a significant risk of death' or grievous bodily

injury." *Medina*, 960 F.2d at 1496.  The objective facts of record fail to reflect

deliberate or reckless indifference.  Pase's weaving in and out of traffic on the

bridge, his speeding, his failure to activate his lights and siren, his failure to contact his dispatcher, and the other alleged acts and omissions considered in light of the weather, road, and traffic conditions asserted in plaintiff's briefs, fail to demonstrate "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574.

The same holds true for the testimony relating to Pase's subjective intent.  Pase testified that he decided not to activate his emergency equipment because of the road and weather conditions, because use of an unmarked vehicle to initiate a chase was discouraged, and because he wished to avoid a car chase.  In his experience, if a violator has a sufficient 'jump' on a police car, the violator may flee rather than stop.  Pase's testimony reflects that he was aware of the risks surrounding his decision to speed[8] and to not use his emergency equipment, and made a choice based on his desire to protect the public safety rather than to abuse his power.

Bearing in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims, *i.e.*, (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting

---

[8]See Dk. 94/227 (Pase depo. Exh. 5, p. 2.)

upon public safety, *see Uhlrig,* 64 F.3d at 573 (citations omitted), the court finds no action or inaction of defendant Pase which shocks the conscience. Plaintiff's constitutional claim in this case is indistinguishable from a standard state law negligence claim.  It is well settled that negligence is not sufficient to shock the conscience.  *Camuglia v. The City of Albuquerque*  448 F.3d 1214, 1222 -1223 (10th Cir. 2006).   Substantive due process violations require more than an ordinary tort to be actionable.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992);  *Moore*, 438 F.3d at 1040.

Summary judgment is thus warranted on plaintiff's substantive due process claim against defendant Pase.  Because the court holds that defendant Pase did not violate plaintiff's constitutional rights, it need not address whether he is entitled to qualified immunity.

**IV.  Substantive due process claim against City**

The court's resolution of plaintiff's constitutional claim against defendant Pase defeats plaintiff's constitutional claim against the City of Topeka as well.  Where there is no predicate constitutional violation by an officer, the City cannot be liable under § 1983, regardless of the constitutionality or lack thereof of the City's policies.

> Thus, even if it could be said that [the City's] policies, training, and supervision were unconstitutional, the City cannot be held liable where, as

25

here, the officers did not commit a constitutional violation.  *See S.P.*, 134
F.3d at 272 (citing *Brown*, 520 U.S. at 404, 117 S. Ct. 1382, for requirement
that plaintiff show direct causal link between municipal action and
deprivation of federal rights in order to hold municipality liable under §
1983). *See also Heller*, 475 U.S. at 799, 106 S. Ct. 1571 (holding that where
plaintiff has not suffered constitutional injury at the hands of individual
police officer, fact that departmental regulations might have authorized use
of constitutionally excessive force is "quite beside the point").

*Trigalet,* 239 F.3d at 1155 -1156.  *See Graves*, 450 F.3d at 1218.  Accordingly,

summary judgment is warranted on plaintiff's substantive due process claim

against the City.

Plaintiff's motions for partial summary judgment have been reviewed

and are resolved by the rulings above.  The court chose to rule on defendants'

motions for summary judgment and construe the facts in the light most favorable to

the plaintiff, rather than resolve the issues raised in plaintiff's motions for partial

summary judgment by construing the facts in the light most favorable to the

defendant.

## V.  State law claims v. Pase and City

This court lacks original jurisdiction of plaintiff's state law claims of

negligence and negligence per se, and has subject matter jurisdiction only by virtue

of supplemental jurisdiction.  Pursuant to 28 U.S.C. § 1367(c)(3), "[a] district court

may decline to exercise supplemental jurisdiction over a claim when it has

dismissed all claims over which it had original jurisdiction."  *Exum v. U.S. Olympic*

*Committee*, 389 F.3d 1130, 1138-1139 (10th Cir. 2004).  The exercise of

supplemental jurisdiction in this situation is discretionary.  *Id*.  When deciding

whether to exercise supplemental jurisdiction, a federal court should consider and

weigh the values of judicial economy, convenience, fairness, and comity.  *Gold v.*

*Local 7 United Food and Commercial Workers Union,* 159 F.3d 1307, 1310 (10th

Cir. 1998).  "[I]n the usual case in which all federal-law claims are eliminated

before trial, the balance of factors... will point toward declining to exercise

jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 n. 7 (1988); *see United States v. Botefuhr*, 309 F.3d 1263, 1273

(10th Cir. 2002) ("[A] district court should normally dismiss supplemental state

law claims after all federal claims have been dismissed, particularly when the

federal claims are dismissed before trial.").

        Defendants contend that a finding of lack of causation in plaintiff's

substantive due process claims is dispositive of the element of causation in

plaintiff's state law negligence claims against defendants Pase and the City. The

court notes only that this may or may not be so, as causation in the context of a

negligence claim may differ somewhat from causation in the context of a

substantive due process claim. The court declines to exercise supplemental

jurisdiction over plaintiff's claims of negligence and negligence per se against Pase

and the City.

## VI.  Dickson's motion to dismiss

Defendant Dickson has moved to dismiss the case against him if the court sustains defendant Pase's and the City's motions for summary judgment.  No opposition has been filed by plaintiff.  Considering and weighing the values of judicial economy, convenience, fairness, and comity, the court grants the motion.

IT IS THEREFORE ORDERED that defendant Pase's motion for summary judgment (Dk. 71) is granted on the substantive due process claim; that defendant City of Topeka's motion for summary judgment (Dk. 171) is granted on the substantive due process claim; that defendant' Dickson's motion to dismiss (Dk. 173) is granted; and that plaintiff's motions for partial summary judgment (Dks. 175 and 178) are denied.

IT IS FURTHER ORDERED that all other pending motions, including Docket 224, are denied as moot, and Dk. 174 is stricken from the record.

IT IS FURTHER ORDERED that the court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses the same without prejudice.

Dated this 30th day of August, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

28